IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SYSTEMS WEST PERFORMANCE, LLC, a Utah Limited Liability Company,<br><br>                      Plaintiff,<br>v.<br><br>JAMES FARLAND, an individual,<br><br>                      Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 2:14-cv-00276-DN-BCW<br><br>District Judge David Nuffer |

Defendant James Farland ("Farland") filed a Motion to Dismiss ("Motion")[1] in response to Plaintiff's First Amended Complaint ("Complaint").[2] Defendant argues that Plaintiff's first, second, third, and fourth claims for relief—the entire Complaint—should be dismissed for failure to state a claim upon which relief may be granted.[3] Plaintiff Systems West Performance, LLC ("SWP") opposes Defendant's Motion.[4]

As discussed in more detail below, Plaintiff's claims for relief are well plead. Therefore, the Motion is DENIED.

## CONTENTS

BACKGROUND ................................................................................................................ 2
STANDARD OF REVIEW ............................................................................................... 4
DISCUSSION .................................................................................................................... 6
    I.       SWP SUFFICIENTLY ALLEGED THAT FARLAND VIOLATED THE NON-COMPETE CLAUSE BY WORKING FOR SWP'S COMPETITOR ................. 6
          A.     The Complaint Alleges an Enforceable Non-Compete Clause .................. 6
          B.     SWP Alleges Damages for Breach of the Non-Compete Clause ............. 12
          C.     Conclusion ............................................................................................. 13

---

[1] Motion to Dismiss ("Motion"), docket no. 36, filed March 11, 2015.

[2] First Amended Complaint ("Complaint"), docket no. 31, filed February 25, 2015.

[3] Motion at 1.

[4] SWP's Opposition to Motion to Dismiss ("Opposition"), docket no. 41, filed April 12, 2015.

II.     SWP SUFFICIENTLY ALLEGED THAT FARLAND VIOLATED THE NON-
        SOLICITATION CLAUSE BY SOLICITING HIS FORMER CO-WORKERS 13
III.    SWP SUFFICIENTLY PLEAD DAMAGES FROM FARLAND'S VIOLATION
        OF THE NON-DISCLOSURE CLAUSE ........................................................... 14
IV.     SWP HAS PLEAD FRAUD WITH SUFFICIENT PARTICULARITY TO
        SURVIVE FARLAND'S MOTION TO DISMISS ............................................. 15
        A.     Review of Fraud Allegations ................................................................. 15
        B.     SWP Has Plead Fraud with Sufficient Particularity ................................. 18
CONCLUSION AND ORDER .................................................................................... 22

## BACKGROUND

SWP is an information technology, project management, and placement service.[5] SWP employed Farland from March 31, 2011 until April 11, 2014 when Farland terminated his employment with SWP.[6]  Farland provided IT programming, management and project services for SWP's Chicago Client to whom Farland was assigned during the course of his employment.[7] The dispute arises from alleged violations of an Employment Agreement ("Agreement") entered into by SWP and Farland on March 31, 2011.[8]

SWP filed the Complaint on April 15, 2014. It contains four causes of action:

1)  Breach of Non-Competition Agreement
2)  Breach of Non-Solicitation Agreement
3)  Breach of Non-Disclosure Agreement
4)  Fraud

The Agreement[9], which is attached as an exhibit[10] to the Memorandum in Opposition to Motion to Dismiss, contains non-competition, non-solicitation, and non-disclosure clauses.[11]

---

[5] Complaint ¶ 5.

[6] *Id.* at  ¶¶ 7, 16.

[7] *Id.* at ¶ 11.

[8] *Id.* at ¶¶ 7, 17-21.

[9] SWP/Farland Employment Agreement ("Agreement"), attached as Ex. A to Opposition, docket no. 41-1, filed April 12, 2015.

SWP's Complaint alleges that the non-competition clause provides that for 12 months following the termination of his employment with SWP, Farland "would not directly or indirectly, compete with SWP, on his own behalf or on behalf of any other person or entity, by providing similar services to any client or prospective client of SWP on behalf of any other entity."[12] The Complaint also alleges that the non-solicitation clause provided that Farland "would not solicit the employment services of, recruit or hire any other employee of SWP or encourage any such employee to terminate his or her employment with SWP."[13] The Complaint further alleges that the non-disclosure clause provides "without any limitation as to time or duration, [Farland would] never . . . disclose or provide SWP's Proprietary and Confidential Information to any person after the termination of Farland's employment . . . ."[14]

SWP alleges that after Farland terminated his employment, he represented to SWP that he was not going to work, directly or indirectly, for any client or potential client of SWP.[15] SWP further alleges that Farland specifically denied that he was going to work for SWP's client, National Grid, or for SWP's competitor Noise Consulting Group ("Noise").[16] SWP alleges, however, that after Farland left SWP, SWP discovered that Farland was employed by Noise, in violation of the non-competition clause, providing services similar to SWP's services to some of the same clients as he did at SWP.[17] SWP further states that employees are working at National

---

[10] SWP failed to attach the Agreement to the Complaint as per standard procedure—choosing to attach the Agreement to the Opposition Memorandum instead.  However, because Farland did not dispute the authenticity of the Agreement, and referenced the Agreement in his Motion, the Agreement is admitted.

[11] Agreement ¶¶ 3.1 (non-disclosure), 4.2 (non-competition), and 4.3 (non-competition and non-solicitation).

[12] Complaint ¶ 13.

[13] *Id.* at ¶ 14.

[14] *Id.* at ¶ 12.

[15] *Id.* at ¶ 17.

[16] *Id.*

[17] *Id.* at ¶ 18.

Grid on the same project that Farland is working.[18] SWP alleges that Farland breached the non-disclosure clause by disclosing SWP's Proprietary and Confidential Information to Noise and other third parties.[19]

With respect to the non-solicitation clause, SWP alleges that on April 15, 2014, it learned that Farland emailed SWP employees in an attempt to solicit the employees to terminate their employment with SWP and join him at Noise.[20] SWP filed this action after discovering that Farland was working for SWP's competitor.[21]

## STANDARD OF REVIEW

Farland moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants are entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[22] When considering a motion to dismiss for failure to state a claim, the Court presumes the thrust of all well-pleaded facts in the complaint, but need not consider conclusory allegations.[23] Nor is the Court bound to accept the complaint's legal conclusions and opinions, whether or not they are couched as facts.[24] "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."[25]

---

[18] *Id.*

[19] *Id.* at ¶ 30.

[20] *Id.* at ¶¶ 21, 27.

[21] *Id.* at ¶ 62.

[22] *See* *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[23] *See* *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[24] *See* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also* *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[25] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). *See also Tellabs, Inc. v. Makor*

The United States Supreme Court has held that satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[26] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27] "[N]aked assertions devoid of further factual enhancement,"[28] do not state a claim sufficiently to survive a motion to dismiss."

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[29] "[T]he mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[30] That is, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[31] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional

---

*Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Charles Alan Wright, Arthur R. Miller et al., Fed. Prac. & Proc. Civ. § 1357 (database updated April 2015)).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

[27] *Id.*

[28] *Id.*

[29] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

[30] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[31] *Robbins v. Oklahoma* 519 F.3d 1242, 1247-48 (10th Cir. 2008).

allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[32]

## DISCUSSION

### I. SWP SUFFICIENTLY ALLEGED THAT FARLAND VIOLATED THE NON-COMPETE CLAUSE BY WORKING FOR SWP'S COMPETITOR

SWP alleges that Farland violated the non-compete clause of the Agreement by going to work for SWP's competitor, Noise. SWP also alleges that the non-compete clause in question protects SWP's legitimate interests. In response, Farland challenges the enforceability of the non-compete clause, arguing that "[t]he covenant at issue here is not calculated to protect any legitimate interest of SWP."[33] Farland further argues that "the non-compete clause serves only to limit the competition from [SWP's] competitors and to restrain Farland's ability to seek identical employment elsewhere in the industry."[34] In other words, Farland argues that the non-compete clause is unenforceable against him because his job was a common calling. Thus, the first question is whether the non-compete clause of the Agreement is enforceable.

### A. The Complaint Alleges an Enforceable Non-Compete Clause

"Covenants not to compete are enforceable if carefully drawn to protect only the legitimate interests of the employer."[35] Utah courts will only enforce restrictive covenants "where they are necessary for the protection of the business for the benefit of which the covenant was made and no greater restraint is imposed than is reasonably necessary to secure such

---

[32] *Id.* at 1248.

[33] Motion at 5.

[34] *Id.*

[35] *Robbins v. Finlay*, 645 P.2d 623, 627 (Utah 1982).

protection."[36] Utah courts consider the following factors in determining the reasonableness of non-compete agreements:

> Geographical extent; the duration of the limitation; the nature of the employee's duties; and the nature of the interest which the employer seeks to protect such as trade secrets, the goodwill of his business, or an extraordinary investment in the training or education of the employee.[37]

### i.     The Geographic Extent Is Reasonable

"Of primary importance in the determination of reasonableness are the location and nature of the employer's clientele."[38] The reasonableness of the geographic scope is determined on a case by case basis,[39] but "[u]nlimited territorial restriction[s] [are] unnecessary and unjustifiable for [the employer]'s protection and therefore unreasonable."[40]

In *System Concepts*, a cable company sought to enforce a non-compete clause against a former employee.[41] The non-compete clause did not state a specific geographic restriction because the clientele for the cable company was not tied to a single locale, but was spread across the United States and limited to approximately 2,500 potential customers.[42] The Court held that "it was not unreasonable" for the company to "omit from the covenant a specific and explicit special restriction" because the cable television industry had "inherent limitations" as to its geographical scope because of its "recent inception."[43] Consequently, the Court held that the covenant not to compete was reasonable even though it lacked specific geographic restrictions.[44]

---

[36] *Allen v. Rose Park Pharmacy*, 120 Utah 608, 614 (1951).

[37] *Robbins*, 645 P.2d at 627.

[38] *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 427 (Utah 1983).

[39] *Id.*

[40] *Id.* at 427 (quoting *H&R Block, Inc. v. Lovelace*, 493 P.2d 205, 213 (Kan. 1972)).

[41] *Id.* at 424.

[42] *Id.* at 427.

[43] *Id.*

[44] *Id.*

"Furthermore," the Court concluded, "the breadth of the covenant is sufficiently limited by specific activity restrictions, which, under the peculiar circumstances of this case, have greater utility and propriety than a spacial restriction."[45] Put simply, the former employee was not prohibited from working in *any* market in the United States—he was only prohibited from working for competitors located in the *target market* of his former employer.[46]

SWP argues that the non-compete clause is reasonable even though it lacks a specific geographic scope.[47] SWP argues that although no geographic limit is stated in the Agreement, there is a narrow restriction against providing to clients or prospective clients of SWP the same or similar services that Farland provided to SWP clients. The Agreement contains activity restrictions prohibiting former employees from competing in SWP's target market, rather than containing spacial restrictions.[48]

SWP is correct. Just as the defendant in *System Concepts* was not prevented from working at *any* company in his field, Farland is not prevented from working for any IT company. Instead, he is prevented from working for any client or prospective client of SWP.[49] As such, although the restrictive covenant in this case lacks a specific geographical limitation, it has been reasonably limited by certain activity restrictions. Consequently, this factor weighs in favor of the reasonableness and enforceability of the non-compete clause.

---

[45] *Id.*

[46] *Id.*

[47] Opposition at 6.

[48] *Id.*

[49] Agreement at ¶ 4.3(c) (prohibiting employee from "provid[ing] services to any such client or prospective client of SWP . . . if such services are the same as or similar to the services that You have provided on behalf of SWP to any of its clients").

### ii.     The Duration of the Limitation Is Reasonable

SWP alleges that the non-compete clause is reasonable in duration.[50] The reasonableness of the duration of a limitation in a non-compete clause is determined on a case by case basis,[51] but Utah courts have upheld restrictive covenants for up to twenty-five years.[52] The restrictive covenant in this case is for twelve months. A one-year time restriction seems reasonable under the circumstances plead, and does not result in undue hardship, taking into consideration the other factors at play. Consequently, this factor weighs in favor of a finding of reasonableness and enforceability of the non-compete clause.

### iii.    The Nature of Farland's Duties Made It Reasonable for Him to Be Subject to A Non-Compete Clause

Farland suggests that the covenant not to compete is not reasonable or enforceable because Farland's job was a common calling.[53] "Covenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable."[54] Farland relies on *Robbins v. Finlay* to support his claim that his job was a common calling.[55] In *Robbins*, the Plaintiff employed the defendant ("Finlay") as a hearing aid salesman.[56] Finlay was a salesman with no skills or training beyond selling a product to a customer.[57] Finlay eventually terminated his employment and opened his own hearing aid

---

[50] Opposition at 6.

[51] *System Concepts*, 669 P.2d at 427.

[52] *See e.g.*, *Robbins*, 645 P.2d at 624 (upholding a non-compete clause with a one-year restriction); *Valley Mortuary v. Fairbanks*, 225 P.2d 739, 741 (Utah 1951) (upholding a non-compete clause with a twenty-five-year restriction).

[53] Motion at 3-5; Reply to Memorandum in Opposition to Motion to Dismiss ("Reply") at 3, 4, docket no. 45, filed March 30, 2015.

[54] *Robbins*, 645 P.2d at 627.

[55] Motion at 3-5.

[56] *Robbins*, 645 P.2d at 624.

[57] *Id.* at 625.

business in competition with his former employer.[58] The former employer sued Finlay for breach of a covenant not to compete.[59] The Utah Supreme Court held that the restrictive covenant was unenforceable because it was unreasonable.[60] The Court reasoned that "Finlay's job required little training and is not unlike the job of many other types of salesmen. The company's investment in training him was small."[61]

Unlike Finlay's services in *Robbins*, Farland's services at SWP were allegedly special and unique, and his job was not a common calling.[62] SWP also alleges that Farland requested additional training for project management and career coaching which cost SWP over $5,000. This is in direct contrast to the *Robbins* case. The defendant in *Robbins* required no training from the company he worked for.  Here, Farland works in IT, a field that requires additional education and training beyond that of a salesman.  SWP also alleges that it invested extra time and money in training Farland in the form of project management training and career coaching.  As such, this factor weighs in favor of the reasonableness and enforceability of the non-compete clause.

iv.       **The Interest SWP Sought to Protect Was Reasonable**

SWP alleges that the restrictive covenant seeks to protect SWP's Proprietary and Confidential Information which includes trade secrets.[63] A covenant not to compete is valid when it protects goodwill as well as trade secrets.[64] Here, SWP alleges that Farland was privy to

---

[58] *Id.* at 624.

[59] *Id.*

[60] *Id.* at 628.

[61] *Id.*

[62] Complaint ¶¶ 5, 8-10.

[63] *Id.* at ¶ 8; Agreement ¶ 2.1.

[64] *System Concepts*, 669 P.2d at 426.

the Proprietary and Confidential Information which, as defined in the Agreement,[65] includes trade secrets.[66] Therefore, the non-compete clause was reasonable to protect those interests.[67]

SWP emphasizes that it "disclosed to Farland valuable Proprietary and Confidential Information of SWP that it has developed at great expens[e] over several years."[68] Examples of SWP's Proprietary and Confidential Information are algorithms, business plans, formulas, computer codes, and source codes, etc.[69] SWP's interest in protecting its Proprietary and Confidential Information is reasonable. Therefore, this factor weighs in favor of the reasonableness and enforceability of the non-compete clause.

### v.   The Goodwill of the Business Was a Legitimate Reason for the Non-Compete Clause

SWP alleges that its goodwill depended on Farland.[70] Farland argues that SWP failed to allege goodwill because SWP only relies on its own conclusory allegations to show a nexus between Farland and SWP's goodwill.[71] SWP alleges that "[b]ecause of the uniqueness and value of Farland's services to SWP's Chicago Client, important aspects of SWP's goodwill with SWP's Chicago Client depended upon Farland's performance and services."[72] SWP alleges that Farland engaged in project management with SWP's clients. These allegations are sufficient to show that Farland worked closely with SWP's clients and developed a relationship. As such, it is

---

[65] Agreement ¶ 2.1.

[66] Complaint ¶ 8.

[67] Opposition at 4.

[68] Complaint ¶ 8.

[69] Agreement ¶ 2.1.

[70] Complaint ¶ 9.

[71] Reply at 4-5.

[72] Complaint ¶ 9.

plausible that he was responsible for SWP's goodwill when working for SWP's clients. Therefore, this factor weighs in favor of reasonableness and enforceability.

### vi.      SWP Invested Significantly in Farland's Training and Education

SWP alleges that it provided addition training for project management and career counseling per Farland's request.[73] SWP allegedly spent over $5,000 for additional training for Farland.[74] As such, SWP provided significant training to Farland. Thus, this factor weighs in favor of reasonableness and enforceability.

### vii.      The Non-Compete Clause is Enforceable as Plead

Because each of the six factors[75] Utah courts use to determine the reasonableness of non-compete clauses weigh in favor of enforceability, the non-compete clause is reasonable and therefore enforceable, based on the pleadings.

### B.  SWP Alleges Damages for Breach of the Non-Compete Clause

Farland argues in the alternative that even if the non-compete clause is enforceable, SWP is "not entitled to the damages outlined in its complaint."[76] Farland takes this position because, according to Farland, "[t]he measure of damages for a restrictive covenant is the lost profit of the plaintiff[,]"[77] and the "First Amended Complaint lacks any allegations about its loss of clients, business, or income as a result of Farland's supposed conduct."[78] SWP opposes Farland's argument by noting that "the measure of damages" is an "issue for trial, and not a Rule 12(b)(6)

---

[73] *Id.* at ¶¶ 8, 33.

[74] *Id.* at ¶ 61.

[75] *Robbins,* 645 P.2d at 627.

[76] Motion at 5.

[77] *Id.* (quoting *TruGreen Companies, LLC v. Mower Brothers, Inc.,* 2008 UT 81, ¶9, 199 P.3d 929).

[78] *Id.*

dismissal issue."[79] SWP is correct.[80] Because SWP sufficiently alleges that it was damaged by Farland's alleged breach,[81] SWP's pleading is sufficient.

### C. Conclusion

SWP sufficiently alleges that the non-compete clause was reasonable and therefore enforceable, and sufficiently alleges damages. Therefore, SWP has sufficiently stated a claim for breach of the non-compete clause and the motion to dismiss the non-compete claim is DENIED.

## II. SWP SUFFICIENTLY ALLEGED THAT FARLAND VIOLATED THE NON-SOLICITATION CLAUSE BY SOLICITING HIS FORMER CO-WORKERS

Farland argues that SWP did not sufficiently plead breach of the non-solicitation clause because "SWP claims only that Farland has attempted to recruit its employees to join Noise"[82] but did not allege that Farland was successful in his efforts. Thus, according to Farland, SWP has "failed to allege damages sufficient to support its claim for breach of non-disclosure agreement."[83] Farland is incorrect.

The Complaint alleges that Farland is "actively recruiting and soliciting SWP employees to join SWP's competitor Noise . . . ."[84] The Complaint also alleges that "Farland's breaches . . . have damaged, and are damaging, SWP . . . ."[85]

The Agreement states that:

> During the term of Your employment with SWP, and for a period of twelve months immediately following the termination of such employment for any reason, You will not, directly or indirectly, either in at to or from any client, agent

---

[79] Opposition at 5 n. 19.

[80] *See* 5A Charles Alan Wright, Arthur A. Miller et al., Fed. Prac. & Proc. Civ. § 1310 (database updated April 2015).

[81] Complaint ¶ 25.

[82] Motion at 6.

[83] *Id.* at 6-7.

[84] Complaint ¶ 27.

[85] *Id.* at ¶ 28.

of any client, or on behalf of any other person or any firm, company or corporation . . . (d) *solicit the employment services of*, recruit or hire any other employee of SWP *or encourage any such employee to terminate his or her employment with SWP*.[86]

The Agreement does not require that Farland is successful in his recruiting efforts. Rather, the Agreement prohibits soliciting *or encouraging* any employee to terminate their employment with SWP. Although Farland might not have been successful in recruiting SWP employees to join him at Noise, SWP sufficiently alleges breach of the non-solicitation clause by alleging that Farland actively encouraged his former coworkers to join him at Noise in violation of the non-solicitation clause.[87] Also, SWP sufficiently alleges that it has been damaged as a result of the breach.[88] The amount of the damages can be proved later. Consequently, SWP sufficiently alleges that Farland has violated the non-solicitation clause and has caused damages to SWP as a result. Farland's motion to dismiss the non-solicitation claim is DENIED.

## III.   SWP SUFFICIENTLY PLEAD DAMAGES FROM FARLAND'S VIOLATION OF THE NON-DISCLOSURE CLAUSE

Farland claims that SWP has failed to allege damages sufficient to support SWP's breach of non-disclosure clause.[89] Specifically, Farland argues that SWP has made "only the conclusory statement that it has been damage[d], without providing allegations to support its claim."[90] Thus, according to Farland, SWP has "failed to allege damages sufficient to support its claim . . . ."[91] Farland is incorrect.

---

[86] Agreement at ¶ 4.3(d) (emphasis added).

[87] Complaint ¶¶ 21, 27.

[88] *Id.* at ¶ 28.

[89] Motion at 6.

[90] *Id.*

[91] *Id.* at 6, 7.

The First Amended Complaint states that:

30. After he left SWP, Farland disclosed to SWP's competitor Noise and other third parties SWP's Proprietary and Confidential information for the benefit of Farland and his employer Noise and to the detriment of SWP.

31. Farland's breaches of the Non-Disclosure Agreement have damaged, and are continuing to damage, SWP in an amount to be proven at trial.[92]

Although SWP makes a broad allegation that "Farland disclosed . . . SWP's Proprietary and Confidential information," and does not identify a *specific piece* of Proprietary and Confidential Information that Farland disclosed, this does not fail to state a claim. The term "Proprietary and Confidential Information" is defined in the Agreement,[93] and Farland is on notice of the claims against him. While this allegation is minimal, it is sufficient. Moreover, Farland chooses to focus his attack on SWP's failure "to allege damages," which, as also discussed in sections I(B) and II, is incorrect. SWP clearly states in its Complaint that it has been damaged, and the amount of the damages can be proved at a later point. SWP has properly plead that Farland violated the non-disclosure clause and that SWP has been damaged.

## IV.   SWP HAS PLEAD FRAUD WITH SUFFICIENT PARTICULARITY TO SURVIVE FARLAND'S MOTION TO DISMISS

### A.   Review of Fraud Allegations

The Complaint's allegations must be taken as true on this motion.[94] The following facts are alleged:

In August of 2013, SWP agreed to pay $1,000 a month for career coaching and training for Farland to increase his value as an employee.[95] Farland also requested, and SWP agreed to

---

[92] Complaint ¶¶ 30, 31.

[93] Agreement ¶ 2.1.

[94] *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("[A]ll well-pleaded factual allegations in the Amended Complaint are accepted as true and viewed in the light most favorable to the nonmoving party.").

[95] Complaint ¶ 33.

pay for Farland to take a project management training and certification course.[96] SWP continued

paying for both training courses until Farland terminated his employment in April 2014.[97]

Farland decided to leave SWP on or before January 1, 2014 because, on that date, he

posted his resume on Monster.com representing that he was seeking new employment.[98] On

January 2, 2014, Farland requested that SWP provide him with a copy of his employment

records "proving that I am employed with Systems West."[99] Farland claimed the request was for

a personal injury legal case he was involved in.[100] However, Farland requested his employment

records to aid in his search for a new job.[101]

SWP learned of the Monster.com posting on January 2, 2014.[102] In response to the post,

SWP's Vice President called Farland on the telephone between January 2 and January 6, 2014 to

tell Farland that SWP did not wish to continue to fund Farland's project management training

and career coaching if Farland was planning on leaving SWP.[103] Farland stated that he had only

posted on Monster.com to network, and requested that SWP continue to pay for his additional

project management training and career coaching.[104]

---

[96] *Id.* at ¶ 34.

[97] *Id.* at ¶¶ 33, 34.

[98] *Id.* at ¶ 36.

[99] *Id.* at ¶ 37.

[100] *Id.*

[101] *Id.*

[102] *Id.* at ¶ 38.

[103] *Id.* at ¶ 39.

[104] *Id.* at ¶¶ 39, 40.

On several other occasions Farland represented to SWP's Vice President that he was not planning to terminate his employment and requested continued financial and other support for his project management training and career coaching.[105]

Farland's decision to leave SWP on or before January 1, 2014 is further evidenced by Farland's communication with multiple recruiters on January 22, 24, 27 and 30 and 31; February 3 and 6; and March 5,6,11 and 17 2014.[106] Farland has admitted that on one occasion in early 2014 he spoke with a representative of SWP's Competitor Noise.[107] One month before Farland terminated his employment, he told an agent of Noise that he was interested in a position with Noise.[108] On March 20, 2014 Farland informed SWP that he was leaving SWP, with April 11, 2014 as his last day.[109] On April 7, 2014 Farland told SWP's Vice President that he planned to take two weeks off in preparation for the project management certification test.[110] Farland stated that he was planning to work for a Chicago freight company, not a competitor of SWP.[111]

On April 8, 2014 SWP wrote to Farland summarizing the non-disclosure, non-competition and non-solicitation promises he had made in the Agreement, specifically reminding Farland that he was prohibited from working for a competitor of SWP for twelve months after his termination.[112] This notice specifically included National Grid and Exelon.[113]

---

[105] *Id.* at ¶¶ 39-42.

[106] *Id.* at ¶ 45.

[107] *Id.* at ¶ 46.

[108] *Id.* at ¶ 50.

[109] *Id.* at ¶ 51.

[110] *Id.* at ¶ 52.

[111] *Id.*

[112] *Id.* at ¶ 53.

[113] *Id.*

On April 9, 2014 SWP discovered that Farland's name was listed by National Grid showing that Farland as an employee of Noise was performing work for services similar to the services that Farland had been performing for SWP.[114] SWP had previously told Farland about this work at National Grid, and had offered to submit Farland's name to National Grid.[115]

That same day, on April 9, 2014, SWP's Vice President confronted Farland with this information.[116] Farland represented to the Vice President that he was not going to work at National Grid and that he did not understand why his name would have appeared on the report.[117]

SWP learned on April 16, 2014 that Farland had started working on behalf of Noise at National Grid.[118] SWP spent over $5,000 on Farland's career coaching and project management training from January-March 2014.[119]

B. **SWP Has Plead Fraud with Sufficient Particularity**

Farland claims his alleged conduct does not rise to the level of fraud.[120] He argues that SWP has failed to plead each of the elements for fraud with clear and convincing evidence.[121] SWP disagrees, arguing "Rule 12(b)(6) has nothing to do with evidence, but only with allegations."[122] SWP maintains that it has sufficiently alleged fraud by pleading, among other things, that "on or before January 1, 2014, [Farland] decided to leave SWP, but falsely

---

[114] *Id.* at ¶ 54.

[115] *Id.*

[116] *Id.* at ¶ 55.

[117] *Id.*

[118] *Id.* at ¶ 58. SWP decided not to seek preliminary relief because, according to SWP, it would have damaged SWP's relationship with National Grid. *Id.*

[119] *Id.* at ¶ 61.

[120] Motion at 7.

[121] *Id.* at 8.

[122] Opposition at 8.

represented to SWP on at least 11 particularized occasions that he had not decided to leave SWP."[123] SWP is correct.

 "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[124] "Rule 9(b) requires that a complaint set forth the identity of the party making the false statements, that is, which statements were allegedly made by whom."[125] Rule 9(b) also requires "that the pleadings give notice to the defendants of the fraudulent statements for which they are alleged to be responsible."[126] A plaintiff does not need to establish the elements of fraud by clear and convincing evidence at the pleading stage, however. And Rule 9(b) does not require "that the allegations be factually or legally valid."[127]

The parties agree[128] that to establish a *prima facie* case of fraud under Utah law, SWP must establish the following:

> (1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in  ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act: (9) to his injury and damage.[129]

---

[123] *Id.*

[124] Fed. R. Civ. P. 9(b); *Franco v. Church of Jesus Christ of Latter Day Saints*, 2001 UT 25, ¶ 33, 21 P.3d 198 (listing elements of fraud).

[125] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997).

[126] *Id.*

[127] *Id.*

[128] Opposition at 8 ("SWP agrees that it must plead with particularity the nine elements summarized in the *Franco* decision that defendant cites.").

[129] *Precision Vascular Systems, Inc. v. Sarcos, L.C.*, 199 F. Supp.2d 1181, 1191 (2002).

As discussed below, SWP meets this standard. Each of the following subsections will examine some of the elements of fraud. Subsection (i) addresses elements (1) through (5); subsection (ii) addresses elements (6) through (8); and subsection (iii) addresses element (9).

### i. SWP Alleges with Particularity that Farland Fraudulently Represented He Was Not Planning on Leaving SWP or Working for any of Its Competitors

SWP sufficiently alleges that Farland fraudulently represented that he was not planning on either leaving SWP or working for any of its competitors. SWP lists each occurrence with its corresponding date, circumstances and the individuals involved with each misrepresentation. SWP alleges that while Farland was working for SWP he posted his resume on Monster.com representing that he was looking for new employment.[130] SWP states that in response to SWP's Vice President's inquiries about his Monster.com posting, Farland responded that he posted on Monster.com to network, not to find a job.[131] SWP further alleges that in the following months Farland was asked several times about his future employment plans, and each time Farland responded that he had no intention of leaving SWP, and requested that SWP continue to support financially and otherwise his career coaching and project management training.[132] SWP alleges that Farland spoke with employment recruiters during his employment at SWP and informed a Noise representative that he would be interested in working for Noise.[133]

Furthermore, SWP alleges that Farland continued to fraudulently represent that he would not be working for Noise after he had given SWP his notice. In particular, when the Vice President of SWP asked him what his plans were after the termination of his employment Farland stated that he planned to study for the project management certification test, and then

---

[130] Complaint ¶ 36.

[131] *Id.* at ¶ 39.

[132] *Id.* at ¶¶ 39-42.

[133] *Id.* at ¶¶ 45, 50.

work for a Chicago freight company, not a competitor of SWP.[134] SWP alleges that on April 9,

2014 it discovered that Farland was listed on a project list for National Grid as an employee of

Noise.[135] SWP further claims that when questioned by SWP's Vice President about his name

appearing on the list, Farland responded that it must have been a mistake because he had no

intention of working at National Grid.[136] SWP has sufficiently alleged that "a representation was

made; (2) concerning a presently existing material fact; (3) which was false; (4) which the

representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient

knowledge upon which to base such representation; (5) for the purpose of inducing the other

party to act upon it."[137]

> ii.      **SWP Alleges that It Acted Reasonably and in Ignorance of Farland's**
>          **False Statements, and Consequently Relied upon Farland's**
>          **Misrepresentations**

SWP alleges that it acted reasonably and in ignorance of Farland's false statements, and

consequently relied upon Farland's misrepresentations. SWP alleges Farland misrepresented that

he was *not* planning on leaving SWP, which caused SWP to pay over $5,000 between January to

March 2014 for training Farland requested.[138]

SWP further alleges that Farland falsely represented that he was not going to work for

National Grid and that his name had been placed on its project list by mistake.[139] SWP claims

that because of this, SWP failed to seek a temporary restraining order until Farland was already

---

[134] *Id.* at ¶ 52.

[135] *Id.* at ¶ 54.

[136] *Id.* at ¶ 55.

[137] *Precision Vascular,* 199 F. Supp. 2d at 1191.

[138] Complaint ¶¶ 40, 42, 48, 49, 61.

[139] *Id.* at ¶ 55.

working at National Grid as an employee of Noise.[140] SWP argues that seeking a preliminary

injunction after Farland had started working for National Grid, would have damaged SWP's

relationship with National Grid.[141] Consequently, SWP has sufficiently alleged that it "(6) . . .

act[ed] reasonably and in ignorance of [the statements'] falsity; (7) did in fact rely upon [the

statements]; (8) and was thereby induced to act."[142]

### iii.      SWP Sufficiently Alleges that It Was Damaged Because of Farland's False Representations

SWP sufficiently alleges that it was damaged by Farland's false representations. SWP

alleges that in reliance of Farland's false representations that he was not planning on leaving

SWP, it paid over $5,000 for the training Farland requested from January to March 2014.[143]

SWP also alleges that because Farland assured SWP that he would be working for a Chicago

Freight Company rather than any of SWP's competitors, SWP forewent seeking a temporary

restraining order and preliminary injunction against Farland working at National Grid to SWP's

detriment.[144] SWP alleges that by the time it discovered Farland's alleged fraud, Farland had

already started working at National Grid and to seek preliminary relief would multiply SWP's

damages and be disruptive of SWP's valuable relationship with National Grid.[145] Thus, SWP

sufficiently alleged that it acted "(9) to [its] injury and damage."[146]

### CONCLUSION AND ORDER

Plaintiff's Complaint sufficiently alleges claims for relief for each of the causes of action.

---

[140] *Id.* at ¶ 57.

[141] *Id.*

[142] *Precision Vascular,* 199 F. Supp. 2d at 1191.

[143] Complaint ¶ 61.

[144] *Id.* at ¶ 57.

[145] *Id.* at ¶ 58.

[146] *Precision Vascular,* 199 F. Supp. 2d at 1191.

IT IS HEREBY ORDERED that Farland's Motion to Dismiss[147] is DENIED.


Dated August 18, 2015.

BY THE COURT:

_____

David Nuffer
United States District Judge

---

[147] Motion to Dismiss ("Motion"), docket no. 36, filed March 11, 2015.